IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| W.A. GRIFFIN, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18 CV 1772 |
| | ) Case No. 18 CV 8297 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| TEAMCARE, a Central States Health Plan, and | ) |
| TRUSTEES OF THE CENTRAL STATES, | ) |
| SOUTHEAST AND SOUTHWEST AREAS | ) |
| HEALTH AND WELFARE FUND, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff W.A. Griffin, a doctor, provided medical services to three patients. Those patients were the beneficiaries of a health plan administered by defendants TeamCare and Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund. The patients assigned their health plan benefits to plaintiff, who billed defendants for the medical services she rendered. Defendants did not pay the full amount billed. Plaintiff challenged the payment amounts. She also requested documents that defendants were required to provide under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Defendants failed to timely produce those documents.

Plaintiff filed two suits. In case 18 CV 1772, plaintiff sued for: (1) failure to pay benefits due, 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duties, 29 U.S.C. § 1104; and (3) failure to provide requested documents, 29 U.S.C. § 1132(c)(1)(B). This court dismissed plaintiff's suit. Griffin v. TeamCare, 18 CV 1772, 2018 WL 3685511, at *3 (N.D. Ill. June 21, 2018). The

Seventh Circuit vacated and remanded in part, holding that plaintiff had stated claims for failure to pay benefits due and for failure to provide requested documents. Griffin v. TeamCare, 909 F.3d 842, 847 (7th Cir. 2018).

On remand, plaintiff accepted defendants' offer of judgment on her claim for failure to pay benefits due, which included interest. The parties move for summary judgment on the only remaining claim in case 18 CV 1772: plaintiff's document request claim under 29 U.S.C. § 1132(c)(1)(B). They also move for summary judgment on plaintiff's sole claim in case 18 CV 8297: another document request claim with similar alleged facts, brought under the same statutory provision. For the following reasons, the court grants plaintiff's motions for summary judgment in both cases, denies defendants' motions, and imposes a statutory penalty of $3,555.

## **BACKGROUND**

Plaintiff's allegations are described in Griffin, 2018 WL 3685511 at *1, and Griffin, 909 F.3d at 844–45. The court states only the facts relevant to the parties' summary judgment motions. Those facts are taken from the parties' L.R. 56.1 statements and exhibits and are not genuinely disputed.

Plaintiff provided medical services to three patients. Those patients assigned their plan benefits to plaintiff. Plaintiff billed defendants for her medical services; defendants did not pay her the full amount. Plaintiff challenged the payment amounts. She requested copies of various documents, including: (1) the summary plan description; (2) fee schedules used to determine her payment; and (3) an administration agreement between defendants and Healthcare Service Corporation, an affiliate of Blue Cross Blue Shield Association that forwards out-of-network claims to defendants for defendants to adjudicate.

Under 29 U.S.C. § 1132(c)(1)(B), defendants were required to mail plaintiff the appropriate requested documents within 30 days. They did not do so. For one patient, plaintiff requested the summary plan description, fee schedules, and administration agreement on February 13, 2017. She requested similar documents for two other patients on March 12, 2018, and August 8, 2018. Plaintiff received: (1) the summary plan description on August 18, 2017 (187 days after her first request); (2) the fee schedules on January 29, 2019 (716 days); and (3) the administrative agreement on February 25, 2019 (743 days).

## **DISCUSSION**

The parties move for summary judgment in both cases. Summary judgment is proper when no material fact is genuinely disputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is genuinely disputed if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The court draws all justifiable inferences in favor of the non-moving party. Anderson, 477 U.S. at 255.

The parties raise three issues: (1) whether plaintiff, as an assignee, has standing to sue for statutory penalties; (2) whether plaintiff was entitled to the fee schedules or the administration agreement; and (3) whether the court should impose statutory penalties—and if so, the amount. The first issue determines whether plaintiff is entitled to summary judgment. The second and third issues affect penalties. The court holds that plaintiff has standing and is thus entitled to summary judgment. As for penalties, the court holds that plaintiff was entitled to both documents and imposes a statutory penalty of $3,555.

**1     Standing**

Plaintiff has standing to sue for statutory penalties. See Griffin, 909 F.3d at 846–47 (7th Cir. 2018) (holding that because plaintiff needed to know "how Central States determined the usual, reasonable, and customary rate," she "must be a beneficiary able to sue when she is denied requested information"). Defendants' argument to the contrary relies on section 11.06 of Central States' plan: "Any provider of medical or healthcare services . . . seeking to receive[ ] payment from the Fund will, in the absence of evidence to the contrary, be presumed to have claimed a right to do so pursuant to a valid <u>assignment of benefits</u> . . . ." (emphasis added).

Defendants argue that the phrase "assignment of benefits" excludes an assignee from claiming statutory penalties. Not so. Under section 11.06, an assignee may become entitled to a benefit. A person who "may become entitled to a benefit" is a "beneficiary." 29 U.S.C. § 1002(8). A beneficiary "can sue for unpaid benefits under section 1132(a)(1)(B)," so "[i]t follows that Dr. Griffin also must be a beneficiary able to sue when she is denied requested information." Griffin, 909 F.3d at 847 (vacating this court's dismissal of plaintiff's document request claim). Nothing in section 11.06 modifies "assignment of benefits" such that the assignee is no longer a "beneficiary" under 29 U.S.C. § 1002(8)—a beneficiary with standing to sue for penalties.

Defendants do not dispute that they were required to send plaintiff the summary plan description within thirty days and that they failed to do so. Because plaintiff has standing to sue for defendants' tardiness, she is entitled to summary judgment in both cases.

**2     Fee schedules and administration agreement**

The remaining issues affect penalties. First, defendants argue that they were not required to send plaintiff their vendor's fee schedules or their administration agreement with Blue Cross Blue Shield. The court disagrees. Plan administrators must produce "instruments under which the

plan is established or operated." 29 U.S.C. § 1024(b)(4). The fee schedules and the administration agreement were documents under which defendants' plan is operated. Defendants were thus required to disclose both.

### 2.1 Fee schedules

In explaining plaintiff's benefits, defendants cited a third-party vendor's fee schedules. Those fee schedules were "part of the 'pricing methodology' that Central States cited in explaining Dr. Griffin's benefits." Griffin, 909 F.3d at 847 (7th Cir. 2018), quoting Mondry v. American Family Mutual Insurance Co., 557 F.3d 781, 800 (7th Cir. 2009). By relying on the fee schedules to explain plaintiff's benefits, defendants gave the schedules "the status of documents that govern the operation of a plan." Mondry, 557 F.3d at 800. Their disclosure "thus became mandatory under section 1024(b)(4)." Id.

### 2.2 Administration agreement

Defendants were also required to disclose their administration agreement with Blue Cross Blue Shield. That administration agreement "governs the operation of the plan in that it defines the roles of the plan and claims administrators." Griffin, 909 F.3d at 847. Defendants argue that the agreement is irrelevant to plaintiff's benefits claims. They point out that "BCBS has a purely mechanical and clerical, non-discretionary function" for out-of-network claims, claims that are merely "sent to BCBS" and "passe[d] . . . to Central States without making an adjudication."

There is no dispute that defendants adjudicate out-of-network claims and that Blue Cross Blue Shield, in contrast, has a limited role. But even when "the administration of a plan is divided . . . the extent of each administrator's authority is basic information that a plan participant needs to know." Mondry, 557 F.3d at 796 (7th Cir. 2009) (citation omitted). The court in Mondry rejected precisely the argument defendants press. It reversed the dismissal of a

document request claim and remanded with directions to enter summary judgment for the plaintiff, holding that the plan administrator needed to disclose an administration agreement—even though that agreement did not "define what rights or benefits [were] available to the Plan's participants and beneficiaries." Id. at 796, 803 (alteration in original). So too here. Even though the administration agreement did not define plaintiff's rights as a beneficiary, it defined the scope of defendants' authority against that of Blue Cross Blue Shield. It was thus information about how defendants' plan operates and subject to disclosure under 29 U.S.C. § 1024(b)(4).

**3       Statutory penalties**

The remaining issue is whether the court should impose a statutory penalty—and if a penalty is imposed, the amount. When a plan administrator fails to respond to a document request within 30 days, a court may impose penalties for each day that the administrator is tardy, up to $110 per day. 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1. The penalty amount—and whether to impose a penalty at all—is "in the court's discretion." Id.; Ames v. American National Can Co., 170 F.3d 751, 759–60 (7th Cir. 1999) (affirming a decision not to impose penalties because the district court had found good faith and lack of prejudice).

Several factors guide the court's discretion. The most important is whether a penalty would "induce plan administrators to respond in a timely manner." Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan, 942 F.2d 1190, 1193 (7th Cir. 1991). Other factors that courts may consider include the number of requests made, the length and reasons for the delay, whether the administrator acted in good faith, and whether the beneficiary was prejudiced. Ziaee v. Vest, 916 F.2d 1204, 1211 (7th Cir. 1990); Krueger Int'l, Inc. v. Blank, 225 F.3d 806, 810–11 (7th Cir. 2000); Kleinhans v. Lisle Savings Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir. 1987); Mondry, 557 F.3d at 806 (7th Cir. 2009).

None of the parties comes out a clear winner. Plaintiff made multiple requests, although the second two requests included the summary plan description that she had already received. The length of the delay was significant. Defendants argue that "occasional glitches and delays should not be surprising," given "the huge number of claims and document requests" they process. That explanation is unsatisfying. Although defendants may reasonably have thought that the administration agreement was irrelevant and that they could not have easily obtained fee schedules from its vendor, "occasional glitches" do not explain their six-month delay in producing the summary plan description. Nor do defendants explain their delay in producing the fee schedules and administration agreement after the Seventh Circuit rejected their arguments as "meritless," holding that defendants were "required to produce, as requested, Data iSight's fee schedules," and "required to provide" the "contract between Central States and Blue Cross Blue Shield." Griffin, 909 F.3d at 847 (7th Cir. 2018).

Yet, plaintiff offers no evidence that she was prejudiced. She received the fee schedules ten days before she accepted defendants' offer of judgment but does not argue that those fee schedules improved her bargaining position. Nor could they have done so; defendants offered, and plaintiff accepted, the entire amount of her claimed underpayment, plus interest. As for the administration agreement—which plaintiff received months before filing her reply brief—plaintiff argues that having it in hand "would have supported additional claim for breaches of fiduciary duty and provided insight into how each party conducts its fiduciary role during the claim and appeal process." That is entirely conclusory. Despite now having the administration agreement, plaintiff does not explain the nature of those "additional claim[s] for breaches of fiduciary duty." Nor does she explain how the agreement would otherwise have been relevant:

she offers no evidence to dispute that Blue Cross Blue Shield lacks authority to adjudicate out-of-network claims.

Plaintiff also argues that stiff penalties are needed because "court records have proven that Central States is a repeat offender"—those "court records" being her own cases before this court—and that defendants' "underhanded tactics" harm "solo providers like Dr. Griffin, that barely keep business operations moving forward." Yet plaintiff offers no evidence that defendants have withheld documents in other cases. Nor does she offer evidence that they did so in bad faith, in this case or in any other. Nor does plaintiff offer any evidence that she runs her medical practice on a shoestring budget—or even that she is a solo provider. Plaintiff cannot rest on her complaint's allegations: the point of summary judgment is "to pierce the pleadings and to assess the proof . . . to see whether there is a genuine need for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis added; citation and quotation marks omitted).

Given defendants' inadequate explanation for their substantial delay—and plaintiff's inadequate explanation for how she was prejudiced—the court cannot find that defendants acted in bad faith, nor can the court find that plaintiff was in any way prejudiced. The penalty thus turns on whether a penalty would "induce plan administrators to respond in a timely manner." Winchester, 942 F.2d at 1193 (7th Cir. 1991).

The court concludes that a modest penalty of five dollars per day (along with the costs and burdens of having had to defend these suits) is enough to encourage defendants to more promptly respond to requests from beneficiaries. Some courts in comparable situations have declined to impose penalties; others have imposed penalties across the spectrum, from two to seventy-five dollars a day. See Jackson v. E.J. Brach Corp., 937 F. Supp. 735, 742 (N.D. Ill.

1996) (collecting statutory penalty cases in which the plaintiff "established little or no prejudice"); Jones v. UOP, 16 F.3d 141, 145 (7th Cir. 1994) (affirming a twenty-dollar daily penalty because, in part, the plaintiff "was unable to show any harm from the delays"); Fenster v. Tepfer & Spitz, Ltd., 301 F.3d 851, 858 (7th Cir. 2002) (holding that the district court "reasonably determined that no penalty was required" because the plan's "failure to comply with the statute" caused no "material[ ] prejudice").

The parties offer no argument and no authority about whether to multiply that five-dollar daily penalty per document. If a beneficiary requests ten documents, and the plan administrator produces all ten documents on the thirty-first day, and a court imposes a penalty of $100 per day, must the plan pay $100, or $1,000? See Ziaee v. Vest, 916 F.2d 1204, 1210–11 (7th Cir. 1990) (discussing but not deciding whether penalties may be imposed per "document day"). Nor do the parties discuss whether to multiply the daily penalty per request. See id. (discussing but not deciding whether penalties may be imposed per request). The court assumes without deciding that multiplying the daily penalty per document or per request might sometimes be proper. The court need not do so, however, to arrive at a fair penalty in this case. See Mondry v. American Family Mutual Insurance Co., 497 F. App'x 603, 610–11 (7th Cir. 2012) ("Like the district judge, we assume without deciding that stacking might be appropriate in some cases; but we detect no abuse of discretion in the judge's conclusion that this was not such a case.").

The five-dollar daily penalty runs from March 16, 2017 (the thirty-first day after plaintiff first requested documents on February 13, 2017), to February 24, 2019 (the day before defendants sent plaintiff the administration agreement), which is 711 days. Defendants must pay plaintiff a penalty of five dollars per day for 711 days: $3,555.

**CONCLUSION**

In 18 CV 1772, plaintiff W.A. Griffin, M.D.'s motion for summary judgment (Doc. 30) is denied as moot on Count I and granted on Count III. The court denies the consolidated summary judgment motion (Doc. 42) filed by defendants TeamCare, a Central States Health Plan, and Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund. In 18 CV 8297, plaintiff's motion for summary judgment (Doc. 38) is granted. The court, having considered the facts of both cases and exercising its discretion under 29 U.S.C. § 1132(c)(1), imposes a statutory penalty of $3,555.

**ENTER:** **September 27, 2019**

_____
**Robert W. Gettleman**
**United States District Judge**